IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERTHA MAZA | ) | |
| | ) | |
| Plaintiff, | ) | No. 23 C 14520 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| CVS PHARMACY, INC., | ) | |
| HIGHLAND PARK CVS, LLC, and | ) | |
| CVS HEALTH | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Bertha Marza brings this three-count complaint against CVS Pharmacy Inc., Highland Park CVS, LLC, and CVS Health (collectively, "defendants"). Each count alleges negligence against one of the three defendants, respectively. Defendants move for summary judgment on all counts (Doc. 44). For the reasons explained below, defendant's motion for summary judgment is granted.

**BACKGROUND**

This is a case about a fall.[1] Plaintiff arrived at a CVS store located at 3311 N. Pulaski Road, Chicago, Illinois ("the store") at around 10:00-10:30 a.m. on September 16, 2021. She went directly to the pharmacy counter to order medication. After ordering her medication, she walked around the store to kill some time. While walking along one of the store's wider aisles, she tripped and fell on a restocking cart that had boxes of merchandise stacked on it. After

---

[1] The facts in this section are taken from plaintiff's deposition and those facts in defendants' Rule 56.1 statement of undisputed material facts that plaintiff admits to.

1

falling, plaintiff realized that she had suffered an open fracture; her bone was sticking out of her arm.

The circumstances surrounding the fall are largely uncontested. There was no issue with the lighting or visibility in the store. Before plaintiff fell, she was walking straight ahead. Her vision was not obstructed, nor was she distracted. The restocking cart was approximately waist-high and 18 inches wide. The cart did not block the entire aisle; according to plaintiff there was approximately 2.5 feet of space to the side of the cart. From the time plaintiff first observed the cart until the time she fell, plaintiff took 10 to 15 steps and observed the cart the entire time. Plaintiff did not attempt to walk around the cart.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden, and the court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in their favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Under Illinois law, the elements of negligence are: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach. Johnson v. Armstrong, 211 N.E. 3d 355, 371 (Ill. 2022). The duty of care that a business owes to

2

invitees is "to protect them against the unreasonable risk of physical harm." Marshall v. Burger King Corp., 856 N.E.2d 1048, 1059 (Ill. 2006). To show a breach of that duty giving rise to liability, the plaintiff has the burden of proving "(1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff." Parker v. Four Seasons Hotels, Ltd., 845 F.3d 807, 811 (7th Cir. 2017) (citing Jordan v. National Steel Corp., 701 N.E.2d 1092, 1094 (Ill. 1998)).

Defendants' first argument for summary judgment is that the presence of the stocking cart in the store's aisle did not pose an unreasonable risk of harm to persons on the premises. Thus, according to defendants, plaintiff's claim fails at the first hurdle: they owed no duty to protect plaintiff from the stocking cart because it did not present an unreasonable risk of harm. Plaintiff responds that the analysis of whether a hazard poses an unreasonable risk of harm must be assessed relative to the cost of abating it. In plaintiff's words: "the burden of removing the hazard was low relative to the cost and probability of an accident and while not dangerous in and of itself, the circumstances surrounding the cart rendered it unreasonably dangerous."

The court agrees with defendants. The primary case plaintiff relies upon is Stemen v. Avon Prods., Inc., 599 N.E.2d 1140 (Ill. App. 2d 1992). Plaintiff urges this court to refer to the factors that the Stemen court relied upon to determine whether a condition poses an unreasonable risk of harm: "[1] the likelihood of injury, [2] the gravity of the threatened injury, [3] the burden

3

of guarding against the injury, and [4] the consequences of placing the burden on defendant." Stemen, 599 N.E.2d at 1143. Plaintiff points out that in Stemen, the court affirmed a finding that a condition was unreasonably dangerous "although the likelihood of the injury was small," because "its gravity was considerable, and the burden on defendant of guarding against the injury was slight." Id. at 1142. The court will use the Stemen factors to explain why, unlike in that case, the stocking cart here did not pose an unreasonable risk of harm. See also Restatement (Second) of Torts, § 342 and comments a & i (listing similar factors).

Here, the likelihood of injury is very small. Plaintiff argues that, "[s]urely, a jury could find that abandoned carts in the middle of shopping aisles may lead to a high likelihood of injury." The court is not so sure. A single stocking cart was left in the aisle, with approximately 2.5 feet of room available to walk around it. The cart was approximately waist-high and was clearly visible to plaintiff. The likelihood that a reasonable person in plaintiff's shoes—who had a clear view of the cart for 10-15 steps and was admittedly undistracted—would walk directly into the cart and become injured is very slight. See generally Bruns v. City of Centralia, 21 N.E. 3d 684, 689 (Ill. 2014) (using the more traditional four-factor test for duty including "the reasonable foreseeability of the injury"). First, a vast majority of people in plaintiff's position would avoid the cart entirely. Second, for the small minority of people who would bump into or otherwise come into contact with the cart, the risk that such contact would result in an injury is also quite small. The court does not mean to downplay the severity of plaintiff's reported injury, which by all accounts was excruciating.

The gravity of the injury threatened is small. As stated above, an extremely small portion of the people in plaintiff's position would collide with this cart and suffer an injury. For those who would become injured, the most likely expected outcome would be something along the

4

lines of a minor scrape or contusion. The serious injury that plaintiff suffered strikes the court as quite anomalous (and extremely unfortunate) in the circumstances. Herein lies a significant difference between this case and Stemen. In Stemen, a safety latch on a truck trailer was rendered inoperable by the conditions of the defendant's premises. 599 N.E.2d at 1142. The injury that the safety latch was designed to guard against was quite serious: the heavy metal door of a truck trailer swinging shut onto an unsuspecting person standing at the precipice of an open trailer. See id. at 1141-42. The gravity of the injury threatened by that condition is much greater than the gravity of the injury threatened here.

The court finds that the burden of guarding against the injury is moderate. Plaintiff argues that the burden of protecting against this injury was low because "defendant could have prevented the injury from ever occurring by simply moving the cart, placing a warning, or leaving an employee with the stocking cart." As an initial matter, plaintiff's arguments on burden miss the mark because it is not clear that her proposed solutions (and their concomitant burdens) would prevent the injury. Moving the cart would not plausibly have prevented the injury because there is no reason that the same type of injury could not have happened anywhere else in the store. To prevent the injury, defendants could ensure that there are never stocking carts on the floor during open hours. This solution would present a moderately high cost to defendants because it would require them to restock exclusively during closed hours or restock without the aid of carts. See generally Bruns, 21 N.E.3d at 694-95 (recognizing that burden analysis goes beyond the particular condition that caused the injury, i.e., the single stocking cart, and extends to all similar conditions, i.e., defendants' use of stocking carts generally). Either of these options would be moderately costly to the defendants.

The court is doubtful that plaintiff's other two proposed solutions would have prevented

5

the injury here. Plaintiff had a clear sight line on the stationary cart for 10-15 steps before walking directly into it. While the court agrees that a warning sign would pose a low burden to defendants, it is unclear that a warning sign would alter the likelihood that a reasonable person in plaintiff's shoes would walk directly into the cart. Typically, warnings are effective if they disclose a condition that is latent, thus providing people with information they otherwise may not have. Here, someone in plaintiff's shoes has all the relevant information about the risk of injury simply by seeing the cart.

Plaintiff's proposed solution of "leaving an employee with the stocking cart" is similarly unlikely to have prevented the injury. An employee with a stocking cart would likely be focused on the task of restocking shelves. Upon noticing a customer walking down the aisle as plaintiff did, such an employee would have likely continued their work, presuming that the customer would walk around the stocking cart using the ample available space. In addition to being physically present, the attending employee could also orally warn someone in plaintiff's position to be careful. While the burden is not massive, prohibiting employees from ever leaving their stocking carts and requiring them to warn each passerby poses at least a moderate burden on defendants. It would make the process of restocking shelves more labor intensive.

Thus, this case is unlike in <u>Stemen</u>, where the court credited testimony that did "not say" that "either of these [proposed] measures would have imposed <u>any</u> costs on defendant." 599 N.E. 2d at 1142 (emphasis added). The court finds that the measures proposed by plaintiff are not likely to have prevented the injury. Similar measures that could plausibly have prevented the injury—such as never using stocking carts during open hours or having employees constantly attending the carts and providing oral warnings to every passerby—would impose a moderate burden on defendant.

6

The consequence of placing these burdens on defendants is not insignificant, as it would alter the operation of any store that uses restocking carts when customers are present. Requiring restocking to occur during closed hours or without the aid of carts (or alternatively requiring every employee restocking to simultaneously act as a sort of crossing guard) is unwarranted given the minimal risk of injury posed by such a condition.

Ultimately, after taking into consideration the totality of the uncontested facts, the court finds that the stocking cart did not pose an unreasonable risk of harm. In the general sense, "[a]n unreasonable risk of harm refers to dangers that are 'hidden, unusual, or not to be expected.'" Grossman v. Menard, Inc., No. 17 C 2242, 2018 WL 4563071, at *2 (N.D. Ill. Sept. 24, 2018) (quoting Horcher v. Guerin, 236 N.E. 2d 576, 579 (Ill. App. 2d 1956)). In this general sense, the stocking cart did not pose any such hidden, unusual, or unexpected dangers. The danger of tripping and falling on the stocking cart is akin to the danger of tripping and falling on any other clearly visible, stationary object. And, as discussed above, when approached through the lens of the specific Stemen factors, the presence of the stocking cart under the circumstances did not pose an unreasonable risk of danger.[2]

Defendants have shown that there is no dispute of material fact as to the existence of a condition that presented an unreasonable risk of harm to persons on the premises. The stocking cart that plaintiff tripped on did not pose such an unreasonable risk. Therefore, defendants have shown that they are entitled to judgment as a matter of law, because there did not exist "a condition that presents an unreasonable risk of harm to persons on the premises," Parker, 845

---

[2] Plaintiff argues in the alternative that "hazards, which may not create an unreasonable risk on their own can create an unreasonable risk given the circumstances surrounding the hazard." But the circumstance surrounding the hazard that plaintiff cites in support of this argument—the amount of space left in the aisle—is already included in the analysis of whether the stocking cart presented an unreasonable risk of harm.

7

F.3d at 811, which is necessary under Illinois law to substantiate a premises liability action. The court need not reach further arguments on the other required elements of a premises liability action under Illinois law, because the failure of this element is sufficient for all three counts in the complaint to fail.

## CONCLUSION

For the above reasons, defendants' motion for summary judgment is granted (Doc. 44).

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: August 27, 2025**